Goodman

UNITED STATES PATENT AND TRADEMARK OFFICE
Trademark Trial and Appeal Board
P.O. Box 1451
Alexandria, VA 22313-1451

> THIS OPINION IS
> A PRECEDENT OF
> THE TTAB

Mailed: February 14, 2012

Cancellation No. 92051344

Fouad Kallamni

v.

Asad A. Khan

Before Seeherman, Ritchie & Wolfson, Administrative Trademark Judges.

By the Board:

Asad A. Khan, ("respondent"), owns Registration No. 3447536 for the mark OZO ENERGY DRINK, as shown below,



for "soft drinks, namely, energy drinks, cola drinks, fruit flavored soft drinks, fruit juices, low calorie soft drinks" in International Class 32. The registration issued on June 17, 2008, based on Section 44(e) of the Trademark Act.[1] Fouad Kallamni ("petitioner") filed a petition to cancel the registration on priority and likelihood of confusion and

---

[1] Priority was claimed under Section 44(d) based on an application in Pakistan; the involved registration issued based on a Community Trade Mark registration.

fraud grounds.  In his answer, respondent denied the salient allegations in the petition to cancel.

On July 27, 2011, the Board denied petitioner's motion for summary judgment on an unpleaded ground related to Section 44, granting petitioner leave to amend the petition to cancel to assert the Section 44 ground and affording petitioner an opportunity to renew his motion for summary judgment.  Petitioner filed an amended petition to cancel on August 10, 2011, asserting that respondent did not, at the time his registration issued, have a bona fide and effective industrial or commercial establishment in the European Union to support a registration under Section 44(e), or own a registration from any country which he could validly claim as a country of origin.  Petitioner further renewed his motion for summary judgment on that basis.  Respondent did not file an answer to the amended petition to cancel. However, respondent did file a cross-motion for summary judgment on the Section 44 ground and a motion for summary judgment on the fraud ground; we view these motions as a general denial of the salient allegations set forth in the amended petition to cancel, as respondent neither admits nor concedes the grounds stated therein.[2]

---

[2] Petitioner's motion was filed on August 10, 2011; respondent's combined filing--response, cross-motion, and motion for summary judgment--were filed September 3, 2011.

Petitioner's evidence on his renewed motion for summary judgment consists of respondent's responses to petitioner's discovery requests; a TARR printout of petitioner's pending application Serial No. 77265347 for the mark OSO for "energy drink"; a website printout from the Department of State identifying members of the European Union; and the declaration of petitioner's counsel, Christopher J. Day, with an accompanying exhibit. Petitioner also relies on concessions and admissions made by respondent in respondent's June 18, 2011 first cross-motion for summary judgment.

Respondent's evidence on summary judgment consists of his responses to petitioner's discovery requests. Respondent also relies on statements made in his June 18, 2011 first cross-motion for summary judgment and his July 4, 2011 reply in support of his June 18, 2011 first cross-motion for summary judgment.

A party is entitled to summary judgment when it has demonstrated that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In reviewing a motion for summary judgment, the evidentiary record and all reasonable inferences to be drawn from the undisputed facts must be viewed in the light most favorable to the nonmoving

party.  *Olde Tyme Foods Inc. v. Roundy's Inc*., 961 F.2d 200,
22 USPQ2d 1542, 1544 (Fed. Cir. 1992).

<u>Standing</u>

We find that there is no genuine dispute as to
petitioner's standing.  Petitioner has shown, by a TARR
printout, that he filed application Serial No. 77265347 for
the mark OSO for "energy drink" in Class 32, and that this
application has been finally refused on the basis of
likelihood of confusion with respondent's registration, and
is in suspended status pending the determination of this
proceeding.  Thus, proof of petitioner's direct commercial
interest has been established.  *See Life Zone Inc. v.
Middleman Group Inc*., 87 USPQ2d 1953 (TTAB 2008) (standing
found based on opposer's ownership of pending trademark
application and Office action which raised defendant's
application as a potential bar to registration).

<u>Section 44, Country of Origin</u>

We turn to the parties' cross-motions for summary
judgment on the Section 44(e) claim.

The parties agree that the material facts are not in
dispute with regard to this claim, but their opinions
diverge on the legal conclusions to be drawn from such
facts, which are questions of law.  As the Board is faced
with a purely legal question, the issue is appropriate for
resolution by summary judgment.

The undisputed facts may be summarized as follows:

1. Respondent Asad A. Khan is a Pakistani national and is domiciled in Pakistan. (Registration file; Respondent's response/cross-motion for summary judgment.)[3]

2. Respondent filed the underlying application which matured into the registration at issue in this proceeding, claiming priority based on Pakistan Application Number 231092, filed in Pakistan on December 30, 2006. (Registration file).

3. As part of the underlying application, respondent submitted a copy of Community Trade Mark Registration No. 005662887 issued by the European Union on January 11, 2008, claiming this registration was from respondent's country of origin. (Registration file).

4. Respondent's U.S. registration issued under Section 44(e) based on Community Trade Mark Registration No. 005662887. (Registration file).

5. At the time of issuance of the U.S. registration, the only foreign registration respondent owned was Community Trade Mark Registration No. 005662887, which respondent claimed ownership of and submitted during prosecution of his underlying U.S. application. (Petitioner's motion for summary judgment, Exhibits D and H, respondent's responses to petitioner's interrogatory request no. 2 and document request no. 9; Registration file).

6. At the time of issuance of respondent's U.S. registration, respondent's Pakistan Application No. 231092 had not matured into a registration. The Pakistan application is still pending. (Petitioner's motion for summary judgment, Exhibit G, Declaration of Christopher Day and accompanying exhibit; Respondent's response/cross-motion for summary judgment).

---

[3] *See Apple Computer v. TVNET.net Inc*., 90 USPQ2d 1393 (TTAB 2007)(considering certain facts as undisputed based on discovery responses and on concessions made in applicant's brief in response to motion for summary judgment).

7.   Between January 2006 through April 2009, SC Trade Venture & Projects SA ("SC Trade Venture") of Romania, acted on behalf of respondent in regard to "product placement/finding of product customers" [sic] in the Romanian market, and as a "concentrate supplier" for the OZO ENERGY DRINK brand in the European Union.  (Petitioner's motion for summary judgment, Exhibits D and H, respondent's January 12, 2011 and May 5, 2011 discovery responses).[4]

8. SC Trade Venture performed these duties on behalf of respondent and the OZO ENERGY DRINK brand in Romania.  (Petitioner's motion for summary judgment, Exhibits D and H, respondent's January 12, 2011 and May 5, 2011 discovery responses).

9. SC Trade Venture was paid by respondent for the work performed on respondent's behalf including office fees, marketing fees, and technical fees. (Petitioner's motion for summary judgment, Exhibit D, respondent's January 12, 2011 discovery responses; Respondent's response/cross-motion for summary judgment).

10. Respondent engaged Value Added Marketing Service (Pvt) Ltd. (VAMS), a marketing firm and import/sourcer of energy concentrate located in Pakistan, for value-added marketing services, including website development, domain name registration, advertising, consumer taste trial, clearing of raw material, and for human resources. (Petitioner's motion for summary judgment, Exhibits D and H, respondent's January 12, 2011 and May 5, 2011 discovery responses; Respondent's response/cross-motion for summary judgment).

11. OZO Switzerland Ltd., located in Pakistan, handles export documentation on behalf of respondent.  (Petitioner's motion for summary judgment, Exhibit D, respondent's January 12, 2011 discovery responses).

12.  Respondent shipped and sold OZO ENERGY DRINK brand product to third-party distributors in Romania and Bulgaria. (Petitioner's motion for

---

[4] Information regarding SC Trade Venture's role as a concentrate supplier was provided by an affidavit produced in discovery.

summary judgment, Exhibits D and H, respondent's January 12, 2011 and May 5, 2011 discovery responses).

13. Romania and Bulgaria are members of the European Union. (Petitioner's motion for summary judgment, Exhibit F).

14. All of the OZO ENERGY DRINK supplied to the European Union was shipped from Pakistan. No evidence was provided regarding the extent of the sale of concentrate, if any, in the European Union as a result of SC Trade Venture's activity. (Petitioner's motion for summary judgment, Exhibits D and H, respondent's January 12, 2011 and May 5, 2011 discovery responses).

15. Pakistan is not a member of the European Union. (Petitioner's motion for summary judgment, Exhibit F).

16. Respondent has not made use in commerce in the United States of the mark identified in his U.S. registration. (Petitioner's motion for summary judgment, Exhibit B, respondent's January 29, 2011 discovery responses; Registration file).

Section 44(e) of the Trademark Act provides, inter alia, that "a mark duly registered in the country of origin of the foreign applicant may be registered on the principal register if eligible, otherwise on the supplemental register herein provided." 15 U.S.C. § 1126(e). Section 44(c) of the Trademark Act defines an applicant's "country of origin" as "the country in which he has a bona fide and effective industrial or commercial establishment, or if he has not such an establishment the country in which he is domiciled, or if he has not a domicile in any of the countries described in subsection (b) of this section, the country of

which he is a national." 15 U.S.C. § 1126(c).[5] *See In re Fisons Limited*, 197 USPQ 888, 891 (TTAB 1978): Section 44(e) "must be read in conjunction with 44(c)."[6] The country of origin criteria under Section 44(c) involves a "hierarchical alternative analysis." *In re International Barrier Corp.*, 231 USPQ 310, 311 (TTAB 1986). "If the person does not have a bona fide and effective industrial or commercial establishment in any country with which the United States has a treaty (or equivalent) relationship then and only then does one of the other criteria, i.e. domicile or nationality, come into play." *Id*. at 311-312.

An establishment is defined as "'the place where one is permanently fixed for * * * business; * * * an institution or place of business, with its fixtures and organized staff.'" *Ex Parte Blum*, 138 USPQ 316, 317 (Comm'r 1963). A mere office or storehouse is insufficient. *Id*. A mere

---

[5] An applicant can have more than one "country of origin" so long as it has a "bona fide and effective industrial or commercial establishment" in said countries for purposes of Section 44(c). *In re ETA Systems Inc*., 2 USPQ2d 1367 (TTAB 1987).

[6] The parties do not dispute that respondent was eligible to file for registration pursuant to Trademark Act Section 44. Section 44(b) provides that an entity is entitled to the benefits of Section 44 if it is a "person whose country of origin is a party to any convention or treaty relating to trademarks … to which the United States is also a party… ." 15 U.S.C. § 1126(b). The evidence shows that respondent is a Pakistani domiciliary and national; Pakistan is a treaty nation of the Paris Convention. However, respondent did not base his registration on a Pakistan registration (and, indeed, it does not appear from the record that a Pakistan registration has issued). Rather, respondent based his registration on a Community Trade Mark registration and, therefore, the question is whether any country in the European Union qualifies as a "country of origin" of respondent.

postal address is also insufficient. *In re International Barrier Corp*., 231 USPQ at 311 n.3. Factors to consider as to whether a bona fide and effective industrial or commercial establishment exists may include "the presence of production facilities, business offices and personnel." J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 19.31.40 (4th ed. June 2011) (discussing the similar provision in Trademark Act Section 66 requiring a "real and effective industrial or commercial establishment" for registration and finding no legally significant difference between these terms under Trademark Act Section 44 and Section 66); TMEP Section 1002.04 (8th Ed. October 2011).

Petitioner argues that none of respondent's activities as supported by the documentation produced by respondent in discovery shows that he has a bona fide and effective industrial or commercial establishment in the European Community and that "mere product sales" in the European Union, hiring a company (VAMS) to "develop 'marketing tools,'" and "contracting with an independent company" (SC Trade Venture) located in the European Union do not "establish a country of origin," as all are insufficient for this purpose. Petitioner also points out that on the date the registration issued, respondent owned no other registrations, and therefore had nothing with which to

support a Section 44(e) basis for issuance of a U.S. registration.

In response, respondent argues that his relationship with SC Trade Venture is "more of an Employer and a Contractual Employee."  According to respondent, SC Trade Venture "was employed . . . for the sole purpose of marketing, developing OZO brand business and support on technical matters for EU" [sic] and that "the Energy Drink Buyers [in the EU] were sold product directly and payments received directly in the Defendant's Companies."  With regard to respondent's expenditures for value-added marketing through VAMS, respondent argues that this company developed "marketing concepts" "for target countries," particularly "marketing tools for EU countries" for which respondent "paid [sic] significant amount of money." Respondent submits that his business transactions demonstrate a bona fide and effective commercial establishment in the European Union as evidenced by his hiring of "personnel (SC Trade Venture), on contractual basis, to expand business in EU and made significant sales [in the EU] is a proof that the Defendant can claim EU as country of origin in spite of being a Pakistan national."[sic]  Respondent's brief/cross-motion, attachment 1.

10

Although respondent likens his relationship with SC Trade Venture to that of an "employer and contractual employee," there is no genuine dispute of material fact that respondent has neither a permanently fixed place of business with employees located in the European Union nor production facilities in the European Union.  Instead, respondent conducted business through SC Trade Venture, an independent entity in the European Union with which it had a contractual relationship for product sourcing, business development, and marketing.  In fact, respondent himself has asserted that "SC Trade Venture is neither a Licensee, nor a Subsidiary, nor a Parent Company, nor a holding company, nor a special instrument company created for royalty or tax advantages."  Respondent's brief/cross-motion, attachment 2, Respondent's reply to its first cross motion for summary judgment, pp. 3-4.  Thus, respondent's own characterization shows that SC Trade Venture is an independent entity, separate from respondent.[7]  We find as a matter of law that a bona fide and effective industrial or commercial establishment cannot be created by respondent's reliance on the commercial facilities of an independent legal entity which respondent retained to source his European Union

---

[7] Respondent has argued that SC Trade Venture is an employee, referencing the U.S. Internal Revenue Service definition of an employee.  Respondent's argument is misplaced since the definition of an employee applies to an individual, and SC Trade Venture is a corporation.

business.  *See Ex parte Blum*, 138 USPQ at 317 (country of origin cannot be established by relying on the contractual relationship with a licensee in another country where trademark owner maintains no place of business there).

We also find as a matter of law that respondent's shipment of product from Pakistan to third-party distributors in Romania and Bulgaria, did not create a bona fide and effective commercial establishment in the European Union.  Lastly, we find as a matter of law that respondent's activities in Pakistan, including the creation of targeted marketing for European Union countries, do not support a claim of a bona fide and effective commercial establishment in the European Union.  With regard to the other provisions of Section 44(c), there is no genuine dispute that respondent is neither domiciled in nor a national of a European Union country and does not meet the criteria for registration on these bases.

Accordingly, we find, as a matter of law, that respondent has not established the European Union as his country of origin, and that respondent's ownership of Community Trade Mark Registration No. 005662887, issued by the European Union, cannot serve as a basis for registration under Section 44(e).

Accordingly, respondent has no issued foreign registration on which he could rely at the time his U.S.

registration issued under Section 44(e) (and, indeed, still does not have such a registration). In view thereof, petitioner's motion for summary judgment on the Section 44 ground is granted, and respondent's cross-motion for summary judgment on this ground is denied.

The petition to cancel is granted, and respondent's Registration No. 3447536 will be cancelled in due course.[8]

---

[8] In view of our granting petitioner's motion for summary judgment on the Section 44 ground, resulting in cancellation of the registration, we need not consider respondent's motion for summary judgment on the fraud ground, nor do we need to consider the other grounds pleaded in the petition for cancellation.